IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No: 3 : 19-299 |
| v. | |
| **ANDREW CHMIEL** | 18 U.S.C. § 371 |
| **Advantage Orthopedic Systems, Inc.** | 18 U.S.C. § 287 |
| **B&L Medical Supply, Inc.** | 18 U.S.C. § 1001 |
| **Cumberland Medical Equipment, Inc.** | 18 U.S.C. § 1341 |
| **D2 Medical, LLC** | 18 U.S.C. § 1343 |
| **Family Home Medical Equipment &** | 18 U.S.C. § 2 |
| **Supplies, LLC** | 18 U.S.C. § 1347 |
| **In-Home Senior Care, LLC** | 18 U.S.C. § 981(a)(1)(C) |
| **Magnolia Medical Supply Inc.** | 18 U.S.C. § 982(a)(1) |
| **Medical Equipment Solutions of Southeast** | 18 U.S.C. § 982(a)(7) |
| **Florida, LLC** | 18 U.S.C. § 1956(a)(1)(A)(i) |
| **Triana Enterprises, LLC** | 18 U.S.C. § 1956(a)(1)(B)(i) |
| **d/b/a/ Triana Medical Supply** | 18 U.S.C. § 1956(h) |
| **Wren Senior Services,** | 42 U.S.C. § 1320a-7b(b)(2)(A) |
| **d/b/a Dogwood Medical** | 42 U.S.C. § 1320a-7b(b)(2)(B) |
| **Jacmart Medical** | 28 U.S.C. § 2461(c) |
| **Bentley Medical Products** | |
| **DO Delivery** | |
| **a/k/a "Doctor Order Delivery"** | **INDICTMENT** |
| **Pain Center, LLC** | |

COUNT 1

THE GRAND JURY CHARGES:

1.    The defendant, **ANDREW CHMIEL**, and others defrauded the United States,

Medicare, and Medicare patients through a fraudulent kickback scheme that placed profit over

care.

1

## Introduction

2.   The defendant, **ANDREW CHMIEL**, had ownership interest in the following Durable Medical Equipment (DME) companies:

| | |
|---|---|
| **Advantage Orthopedic Systems, Inc.** | Atlanta, Georgia |
| **B&L Medical Supply, Inc.** | Fair Lawn, New Jersey |
| **Cumberland Medical Equipment, Inc.** | Mount Pleasant, South Carolina |
| **D2 Medical, LLC** | Greer, South Carolina |
| **Family Home Medical Equipment & Supplies, LLC** | Port Charlotte, Florida |
| **In-Home Senior Care, LLC** | Taylors, South Carolina |
| **Magnolia Medical Supply Inc.** | Hattiesburg, Mississippi |
| **Medical Equipment Solutions of Southeast Florida, LLC d/b/a Medical Equipment Solutions** | Mt. Pleasant, South Carolina |
| **Triana Enterprises, LLC d/b/a/ Triana Medical Supply** | La Mesa, California |
| **Wren Senior Services, LLC d/b/a Dogwood Medical** | Greer, South Carolina |

3.   The defendant, **ANDREW CHMIEL**, had ownership interest in the following drop-ship companies:

| | |
|---|---|
| **Bentley Medical Products** | Mobile, Alabama |
| **Jacmart Medical** | North Charleston, South Carolina |

4.   The defendant, **ANDREW CHMIEL**, had ownership interest in the following companies that sold the ability to bill Medicare:

| | |
|---|---|
| **DO Delivery, a/k/a "Doctor Order Delivery"** | Mount Pleasant, South Carolina |
| | |
| **Pain Center, LLC** | Mount Pleasant, South Carolina |

5.   Medicare Program (Medicare) is a federal health care program providing benefits to persons who are over the age of sixty-five and some persons under the age of sixty-five, who

are blind, or disabled. Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").

6.     Medicare is a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), in that it is a public plan affecting commerce under which medical benefits, items, and services are provided to individuals and under which individuals and entities who provide medical benefits, items, or services may obtain payments. Medicare was a "Federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f).

7.     Part B of the Medicare Program is a medical insurance program that covered, among other things, certain durable medical equipment ("DME"). Specifically, Medicare Part B covers medically necessary physician office services, including the ordering of durable medical equipment ("DME") such as arm, leg, back, and neck braces.

8.     CMS's Medicare Advantage (MA) Program, known as Medicare Part C, offered beneficiaries a managed care option by allowing them to enroll in private health plans rather than having their care covered through Medicare Part A and Part B. Participating MA organizations included health maintenance organizations, preferred provider organizations, provider-sponsored organizations, and private fee-for-service plans. CMS contracted with MA organizations to provide health services to beneficiaries enrolled in MA. CMS made monthly payments to MA organizations for enrolled beneficiaries. MA organizations covered all medically necessary services, other than hospice care, that are allowable in Medicare Parts A and B.

9.     Commercial health insurance, also known as private health insurance, provided compensation for medical bills that were the result of sickness or injury.   Members of a particular

3

insurance plan paid a monetary premium for health care benefits specified in an insurance policy agreement. When a member made a claim, the private insurance company would provide compensation to the medical care provider and the insured would (depending on the plan) make a co-payment in relation to the goods or services provided.

10.    Private insurance companies include the following: Blue Cross Blue Shield, Humana, Aetna, Inc., Cigna, and United Health Care Services, Inc. These companies offered and administered health care benefit programs within the meaning of Title 18, United States Code, Section 24(b).

11.    Section 1847(a)(2) of the Social Security Act defines Off-The-Shelf ("OTS") orthotics as those orthotics described in section 1861(s)(9) of the Act for which payment would otherwise be made under section 1843(h) of the Act, which require minimal self-adjustment for appropriate use and do not require expertise in trimming, bending, molding, assembling, or customizing to fit to the individual. Orthotics that are currently paid under section 1834(h) of the Act and are described in section 1861(s)(9) of the Act are leg, arm, back, and neck braces. The Medicare Benefit Policy Manual (Publication 100-2), Chapter 15, Section 130 provides the longstanding Medicare definition of "braces." Braces are defined in this section as "rigid or semi-rigid devices which are used for the purpose of supporting a weak or deformed body member or restricting or eliminating motion in a diseased or injured part of the body."

12.    To receive reimbursement from Medicare for non-physician items such as OTS orthotics, a DMEPOS supplier is required to submit a claim, either electronically or in writing, through Form CMS-1500 or UB-92. Claim forms require important information, including: (a) beneficiary's name and identification number; (b) the name and identification number of the

4

referring/ordering provider who ordered the OTS orthotics; (c) the health care benefit item that was provided or supplied to the beneficiary; (d) the billing codes for the specified item; and (e) the date upon which the item was provided or supplied to the beneficiary.

13.    By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors. Health care providers were given and provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations.

14.    By becoming a participating provider in Medicare, enrolled DME companies would have to list the owners and officers of the DME companies on Form 855.

15.    Health care providers could only submit claims to Medicare for reasonable and medically necessary services that they rendered.   Health care providers that sought to participate in Medicare Part B and bill Medicare for the cost of DME and related benefits, items, and services were required to apply for and receive a "supplier number." The supplier number allowed a DME company to submit bills, known as "claims," to Medicare to obtain reimbursement for the cost of DME and related health care benefits, items, and services that a DME company had supplied to beneficiaries. In applying for its supplier number, a DME company must sign certifications, including, among other things that:

> I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions

5

(including, but not limited to, the Federal anti-kickback statute).

16.     Medicare regulations required health care providers enrolled with Medicare to maintain complete and accurate patient medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the physician. Medicare requires complete and accurate patient medical records so that Medicare may verify that the services were provided as described on the claim form. These records were required to be sufficient to permit Medicare, through SGS and other contractors, to review the appropriateness of Medicare payments made to the health care provider.

### The Anti-Kickback Statute

17.     The Anti-Kickback Statute, Title 42, United States Code, Section 1320a-7b(b), prohibits knowingly and willfully offering, paying, soliciting, or receiving a kickback or bribe to induce or reward referrals or the arranging for referrals of items or services reimbursable by a Federal health care program. The Anti-Kickback Statute attaches criminal liability to parties on both sides of an impermissible "kickback" transaction. In doing so, it ensures that patient care is based on what is best for the patient and not upon the financial interest of the person or entity making or arranging for, or receiving the referral; and to ensure that companies provide a service and do not merely purchase the ability to bill Medicare.

### Conspiracy

18.     From at least in or around 2014, and continuing up to and including the date of this Indictment, in the District of South Carolina and elsewhere, the defendant ANDREW CHMIEL and others knowingly and intentionally combined, conspired, confederated, agreed, and had a tacit

understanding to:

a. knowingly defraud the United States by impairing, obstructing and defeating, and attempting to impair, obstruct, and defeat the lawful functions of the United States Department of Health and Human Services in the administration of Medicare;

b. knowingly making a false claim to a department of the United States, in violation of Title 18, United States Code, Section 287.

c. knowingly devised a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and in furtherance of this scheme, did use and cause to be used the United States mail and common carriers, in violation of Title 18, United States Code, Section 1341;

d. knowingly devised a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate commerce, any writings, signs, signals, pictures or sounds for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343;

e. knowingly and willfully devised a scheme and artifice to defraud a health care program and to obtain by means of false and fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in violation of Title 18, United States Code, Section 1347;

f. knowingly offering and paying remuneration, including kickbacks, directly and indirectly, overtly and covertly, in cash and in kind, to any person to induce a person

7

to refer an individual to a person for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A);

g. knowingly offering and paying remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to any person to induce such person to purchase, and arrange for and recommend purchasing and ordering any good, for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B).

### Purpose of the Conspiracy

19. It was the purpose of the conspiracy for the defendant, **ANDREW CHMIEL**, and others to enrich themselves and maximize profits at the expense of the United States and patients by participating in the following scheme.

### Manner and Means of the Conspiracy

20. The manner and means of the conspiracy operated substantially as follows and include, but were not limited to:

a. Various DME companies in the scheme would hide ownership and controlling interests through the use of straw owners.

b. The DME companies entered into agreements with offshore call centers, to purchase completed product orders so that the companies could bill Medicare. The product orders were documented and tracked through a website.

c.      The DME companies would receive a file transfer from the offshore call centers that included a physician's prescription, the Medicare patient's information, and the DME that was to be shipped to the patient.

d.      The DME companies would receive invoices that disguised the fact that what was being purchased was completed product order.

e.      To maximize doctors signing the prescriptions, patients were incentivized to use telemedicine doctors. The telemedicine doctors did not have relationship with the Medicare patients, and could not physically examine them.

f.      The defendant, **ANDREW CHMIEL**, had ownership and control interest in two drop-ship companies, **Bentley Medical Products** and **Jacmart Medical**, that were used to further the scheme by shipping low-cost and low-quality Chinese made products to the Medicare patients.

g.      The defendant, **ANDREW CHMIEL**, and the companies that he has ownership and control interests in the defendant companies, **Advantage Orthopedic Systems, Inc.; B&L Medical Supply, Inc.; Cumberland Medical Equipment, Inc.; D2 Medical, LLC.; Family Home Medical Equipment & Supplies, LLC; In-Home Senior Care, LLC; Magnolia Medical Supply Inc.; Medical Equipment Solutions of Southeast Florida, LLC; Triana Medical Supply; Wren Senior Services, d/b/a Dogwood Medical; Jacmart Medical; Bentley Medical Products; DO Delivery, a/k/a "Doctor Order Delivery** and **Pain Center, LLC;** have billed Medicare $216,984,547and have received $98,935,533; and billed Humana, Inc. and its subsidiaries $4,088,456 and have received $1,799,289.

## Overt Acts

21.    In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the District of South Carolina;

a.  On or about October 30, 2015, **Cumberland Medical Equipment Company** billed Medicare $1,936.11, for Medicare patient V.M., claim number 15301709454000.the

b.  On or about August 1, 2016, **Medical Equipment Solutions of Southeast Florida, LLC** billed Medicare $1,936.10, for Medicare patient A.J., claim number 16208708765000, for a DME product.

c.  On or about April 16, 2018, **In-Home Senior Care, LLC** billed Medicare $999.42, for Medicare patient F.M., claim number 18096709438000, for a DME product.

All in violation of Title 18, United States Code, Section 371.

## Count 2
## Mail Fraud

THE GRAND JURY FURTHER CHARGES:

1.      Paragraphs 1 through 20 of this Indictment are incorporated herein by reference as setting forth a scheme and artifice to defraud;

2.      On or about the date listed below, in the District of South Carolina and elsewhere, the defendant, **ANDREW CHMIEL**, and others, as principals, aiders and abettors, and co-participants in jointly undertaken criminal activity, for the purpose of executing the above-described scheme and artifice to defraud, did knowingly use **Jacmart Medical** to deposit and caused to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier any such matter or thing, to include: DME product(s), to be sent and delivered by any private or commercial interstate, according to the direction thereon, as described below:

| Count | DME | Beneficiary | Medicare Claim | Common Carrier | Ship Date | Amount Billed to Medicare |
|---|---|---|---|---|---|---|
| 2. | **In-Home Senior Care** | J.C. | 18074711296000 | UPS | 3/13/18 | $1576.79 |

In violation of Title 18, United States Code, Sections 1341 and 2.

11

Counts 3-4
Mail Fraud

THE GRAND JURY FURTHER CHARGES:

1.      Paragraphs 1 through 20 of this Indictment are incorporated herein by reference as setting forth a scheme and artifice to defraud;

2.      On or about the dates listed below, in the District of South Carolina and elsewhere, the defendant, **ANDREW CHMIEL**, and others, as principals, aiders and abettors, and co-participants in jointly undertaken criminal activity, for the purpose of executing the above-described scheme and artifice to defraud, did knowingly use **Bentley Medical** to deposit and caused to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier any such matter or thing, to include: DME product(s), to be sent and delivered by any private or commercial interstate, according to the direction thereon, as described below:

| Count | DME | Beneficiary | Medicare Claim | Common Carrier | Ship Date | Amount Billed to Medicare |
|-------|-----|-------------|----------------|----------------|-----------|---------------------------|
| 3.    | **Triana Enterprises LLC** | M.P. | 18089731225000 | FedEx | 3/26/18 | $1,565.83 |
| 4.    | **Triana Enterprises LLC** | R.W. | 18092721883000 | FedEx | 3/27/18 | $1,565.83 |

In violation of Title 18, United States Code, Sections 1341 and 2.

## Counts 5 - 6
## Health Care Fraud

THE GRAND JURY FURTHER CHARGES:

1.    Paragraphs 1 through 20 of this Indictment are incorporated herein by reference as setting forth a scheme and artifice to defraud;

2.    On or about the dates listed below, within the District of South Carolina and elsewhere, the defendant, **ANDREW CHMIEL**, and others, as principals, aiders and abettors, and co-participants in jointly undertaken criminal activity, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud health care benefit programs, to wit: Medicare, and to obtain by means of false and fraudulent pretenses, representations and promises, money and property owned by and under the custody and control of the health care benefit programs, in connection with the delivery of and payment for health care benefits, items and services in the following transaction:

| Count | DME | Beneficiary /Member | Payer/Insurer | Claim | Date Billed | Amount Billed |
|-------|-----|---------------------|---------------|-------|-------------|---------------|
| 5. | **Wren Senior Services d/b/a Dogwood** | G.H. | Medicare | 16286712132000 | 10/14/2016 | $992.47 |
| 6. | **D2 Medical, LLC** | L.K. | Humana | 820183530254914 | 12/19/2018 | $1,565.83 |

In violation of Title 18, United States Code, Section 1347.

13

## Count 7
## Kick-back

THE GRAND JURY FURTHER CHARGES:

1.    Paragraphs 1 through 20 of this Indictment are incorporated herein by reference as setting forth a scheme and artifice to defraud;

2.    On or about the date listed below, in the District of South Carolina and elsewhere, the defendant, **ANDREW CHMIEL**, and others, as principals, aiders and abettors, and co-participants in jointly undertaken criminal activity, knowingly offered and paid remuneration, including kickbacks, directly and indirectly, overtly and covertly, in cash and in kind, to a call center to induce a person to refer an individual to a them for the furnishing and arranging for the furnishing of any item, to wit a DME product, for which payment may be made in whole and in part under a Federal health care program, that is, Medicare.

| Count | DME | Beneficiary | Medicare Claim | Date Billed | Amount Billed to Medicare | Kickback Paid |
|-------|-----|-------------|----------------|-------------|---------------------------|---------------|
| 7. | **Wren Senior Services d/b/a Dogwood** | T.J. | 16201732104000 | 7/21/2016 | $539.12 | $280 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and Title 18, United States Code, Section 2.

14

## Count 8
## Lying to a Federal Agent

THE GRAND JURY FURTHER CHARGES:

1. Paragraphs 1 through 20 of this Indictment are incorporated herein by reference as setting forth a scheme and artifice to defraud;

2. On or about August 10, 2017, in the District of South Carolina, the defendant, **ANDREW CHMIEL**, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the Executive Branch of the Government of the United States; to wit: he falsely told Special Agents from the Federal Bureau of Investigation and the Office of the Inspector General of the Health and Human Services, that he and his companies did not use prescriptions obtained from telemedicine or teledoctors in the submissions to Medicare, when in truth, as he then well knew, this statement was untrue in that many of the claims submitted by his companies had telemedicine/teledoctor prescriptions.

In violation of Title 18, United States Code, Section 1001.

## Count 9

### Lying to a Federal Agent

THE GRAND JURY FURTHER CHARGES:

1.    Paragraphs 1 through 20 of this Indictment are incorporated herein by reference as setting forth a scheme and artifice to defraud;

2.    On or about August 10, 2017, in the District of South Carolina, the defendant, **ANDREW CHMIEL**, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the Executive Branch of the Government of the United States; to wit: he falsely told Special Agents from the Federal Bureau of Investigation and the Office of the Inspector General of the Health and Human Services, that he knew B.K. who was listed as an owner and general manager of **Cumberland Medical Equipment** on the Form 855 through a Filipino friend and that B.K. was the Filipino friend's cousin, when in truth, as he then well knew, this statement was untrue in that B.K. is the daughter of a co-conspirator who owned the call center and that the co-conspirator is not Filipino.

In violation of Title 18, United States Code, Section 1001.

## Count 10
## Conspiracy to Commit Money Laundering

THE GRAND JURY FURTHER CHARGES:

1.     Paragraphs 1 through 20 of this Indictment are incorporated herein by reference as setting forth a scheme and artifice to defraud;

2.     From at least in or around 2015, and continuing up to and including the date of this Indictment, in the District of South Carolina and elsewhere, the defendant, **ANDREW CHMIEL**, and others did knowingly combine, conspire, confederate and agree together and have tacit understanding with each other,

   (a)   to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which in fact involved the proceeds of specified unlawful activity, that is health care fraud, mail fraud and wire fraud; in violation of Title 18, United States Code, Sections 1341, 1343 and 1347, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and further knowing that the transactions were intended to promote the carrying on of a specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

   (b)   to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which in fact involved the proceeds of specified unlawful activity, that is health care fraud, mail fraud and wire fraud; in violation of Title 18, United States Code, Sections 1341, 1343 and 1347, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and further knowing that the transactions were designed, in whole and in part, to conceal and disguise the nature, the location, the source, the ownership, and the control of the property, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

17

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE

### A.    CONSPIRACY:

Upon conviction for violation of Title 18, United States Code, Section 371 (conspiracy to violate 18 U.S.C. §§ 287, 1341, 1343 and 1347) as charged in Count 1 of this Indictment, the Defendant, **ANDREW CHMIEL** and Defendant companies, **Advantage Orthopedic Systems, Inc.; B&L Medical Supply, Inc.; Cumberland Medical Equipment, Inc.; D2 Medical, LLC.; Family Home Medical Equipment & Supplies, LLC; In-Home Senior Care, LLC; Magnolia Medical Supply Inc.; Medical Equipment Solutions of Southeast Florida, LLC; Triana Medical Supply; Wren Senior Services, d/b/a Dogwood Medical; Jacmart Medical; Bentley Medical Products; DO Delivery, a/k/a "Doctor Order Delivery** and **Pain Center, LLC,** shall forfeit to the United States any property, real or personal, constituting, derived from or traceable to proceeds the Defendant and Defendant companies obtained directly or indirectly as a result of such offense.

### B.    MAIL FRAUD:

Upon conviction for violation of Title 18, United States Code, Section 1341 as charged in Counts 2-4 of this Indictment, the Defendant, **ANDREW CHMIEL,** shall forfeit to the United States any property, real or personal, constituting, derived from or traceable to proceeds the Defendant obtained directly or indirectly as a result of such offenses.

### C.    HEALTH CARE FRAUD:

Upon conviction for violation of Title 18, United States Code, Section 1347 as charged in Counts 5-6 of this Indictment, the Defendant, **ANDREW CHMIEL,** shall forfeit to the United

19

States any property, real or personal, constituting, derived from or traceable to proceeds the Defendant obtained directly or indirectly as a result of such offenses.

D.    FALSE STATEMENTS:

Upon conviction for violation of Title 18, United States Code, Section 1001 as charged in Counts 8-9 of this Indictment, the Defendant, **ANDREW CHMIEL**, shall forfeit to the United States any property, real or personal, constituting, derived from or traceable to proceeds the Defendant obtained directly or indirectly as a result of such offenses.

E.    MONEY LAUNDERING:

Upon conviction for violation of Title 18, United States Code, Section 1956 as charged in Count 10 of this Indictment, the Defendant, **ANDREW CHMIEL**, shall forfeit to the United States any property, real or personal, constituting, derived from or traceable to proceeds the Defendant obtained directly or indirectly as a result of such offense and any property, real or personal, involved in a transaction or attempted transaction in violation of such offense.

F.    PROPERTY:

Pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1) and 982(a)(7), and 28 U.S.C. § 2461(c), the property subject to forfeiture includes, but is not limited to, the following:

A.    Cash Proceeds/ Forfeiture Judgment:

A sum of money equal to all proceeds the Defendant and Defendant companies obtained, directly or indirectly, from the offenses charged in this Indictment, and all interest and proceeds traceable thereto, and/or that such sum equals all property derived from or traceable to their violation of 18 U.S.C. §§ 371, 287, 1001, 1341, 1343 and 1347.

B.    Cash Proceeds/ Forfeiture Judgment:

A sum of money equal to all property involved in the money laundering offense charged in this Indictment, and all interest and proceeds traceable

20

thereto, and/or that such sum equals all property derived from or traceable to his violation of 18 U.S.C. § 1956.

C.    Real Properties:

(a)    528 Johnnie Dodd #3
Mt. Pleasant, South Carolina
Parcel No. 514-00-00-176

(b)    1903 Carolina Towne Court
Mt. Pleasant, South Carolina
Parcel No. 558-15-00-276

(c)    696 Hobcaw Bluff
Mt. Pleasant, South Carolina
Parcel No. 537-14-00-077

D.    Vehicles:

(a)    2017 Volvo
VIN: YV4A22PK4H1119450

(b)    2005 Ferrari 430 Spyder
VIN: ZFFEW59A250144753

(c)    2015 Mercedes GLK 350
VIN: WDCGG5HB9FG401988

(d)    2016 Mercedes
VIN: WDCYC3KF8GX251261

(e)    2017 Infinity QX80
VIN: JN8AZ2NF1H9644072

(f)    2018 Tomb Emerge E 4LE
VIN: 4C9TE4836JF407168

E.    Bank Accounts:

(a)    The funds and contents of Bancorp South Bank, Acct # x2517
In the name of: Magnolia Medical Supply Inc.

(b)    The funds and contents of Bank of Travelers Rest, Acct # x5483
In the name of: In-Home Senior Care

21

(c)    The funds and contents of Florida Community Bank, Acct # x1825
In the name of: Family Home Medical Equipment & Supplies LLC

(d)    The funds and contents of Navy Federal Credit Union, Acct # x1508
In the name of: Andrew CHMIEL

(e)    The funds and contents of Navy Federal Credit Union, Acct # x3346
In the name of: Andrew CHMIEL

(f)    The funds and contents of Navy Federal Credit Union, Acct # x5203
In the name of: Andrew CHMIEL and Tuyet Lisa Ly

(g)    The funds and contents of Utah Educational Savings Plan, Acct # x9653
In the name of: Andrew CHMIEL

(h)    The funds and contents of Wells Fargo Bank, Acct # x1125
In the name of: Advantage Orthopedic Systems, Inc.

(i)    The funds and contents of Wells Fargo Bank, Acct # x2376
In the name of: Andrew CHMIEL

(j)    The funds and contents of Wells Fargo Bank, Acct # x5845
In the name of: Andrew CHMIEL

(k)    The funds and contents of Wells Fargo Bank, Acct # x6069
In the name of: Andrew CHMIEL

(l)    The funds and contents of Wells Fargo Bank, Acct # x7809
In the name of: Andrew CHMIEL

(m)    The funds and contents of Wells Fargo Bank, Acct # x6005
In the name of: B & L Medical Supply, Inc.

(n)    The funds and contents of Wells Fargo Bank, Acct # x3627
In the name of: Bentley Medical Products, LLC

(o)    The funds and contents of Wells Fargo Bank, Acct # x5158
In the name of: Bentley Medical Products, LLC

(p)    The funds and contents of Wells Fargo Bank, Acct # x5535
In the name of: D2 Medical, LLC

(q)     The funds and contents of Wells Fargo Bank, Acct # x6047
        In the name of: DO Delivery, LLC

(r)     The funds and contents of Wells Fargo Bank, Acct # x5804
        In the name of: Homerun Holdings, LLC

(s)     The funds and contents of Wells Fargo Bank, Acct # x5973
        In the name of: In-Home Senior Care, LLC

(t)     The funds and contents of Wells Fargo Bank, Acct # x6070
        In the name of: Jacmart Medical, LLC

(u)     The funds and contents of Wells Fargo Bank, Acct # x6138
        In the name of: Pain Center, LLC

(v)     The funds and contents of Wells Fargo Bank, Acct # x9630
        In the name of: Sophie M. CHMIEL and Andrew CHMIEL

G.    SUBSTITUTE ASSETS:

If any of the property described above as being subject to forfeiture, as a result of any act

or omission of the Defendant –

(a)     cannot be located upon the exercise of due diligence;
(b)     has been transferred or sold to, or deposited with, a third person;
(c)     has been placed beyond the jurisdiction of the Court;
(d)     has been substantially diminished in value; or
(e)     has been commingled with other property which cannot be subdivided
        without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as

incorporated by 18 U.S.C. § 982(b)(1), to seek forfeiture of any other property of the said

Defendants up to the value of the above described forfeitable property;

Pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1) and 982(a)(7),

and Title 28, United States Code, Section 2461(c).

23

A ___True___ BILL

███████████████████████████

FOREPERSON

SHERRI A. LYDON
UNITED STATES ATTORNEY